# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                    Case No. 6:15-CR-252-ORL-37GJK

**TIMOTHY SEDLAK,**

    **Defendant.**

_____/

## TIMOTHY SEDLAK'S SENTENCING MEMORANDUM

Timothy Sedlak, by and through his undersigned attorney, respectfully submits this Sentencing Memorandum in support of his request for a reasonable sentence in the instant case. Mr. Sedlak respectfully requests that the Court grant a downward variance from the applicable Sentencing Guidelines range based on the sentencing factors enumerated in 18 U.S.C. § 3553(a). Mr. Sedlak respectfully submits that his advisory guideline of 80 years imprisonment is high and unreasonable. Mr. Sedlak would ask this Court to consider a sentence within the statutory provisions of Count One, which provide for a sentence of 15 to 30 years, and allow the remaining counts to be sentenced concurrently.

A below-guidelines sentence is significant punishment for a 43-year-old man who has never been in prison, and, according to Dr. Imhof, is a low risk to re-offend.[1] Mr. Sedlak's friends and family tell the Court that he is generous and is always willing to help others. *See* Exhibit 2, Timothy Sedlak's Character Letters. He is a talented mechanic and artist. *Id.* They will provide Mr. Sedlak with a supportive network when he is released from prison.

### The Advisory Sentencing Guidelines

The Presentence Report ("PSR") finds that Mr. Sedlak's total offense level is 43; his criminal history category is I; and the resulting advisory sentencing range is 960 months, or 80 years. PSR ¶ 75, 79, 103. Mr. Sedlak faces a mandatory minimum sentence of 15 years. The PSR calculates this sentence by running the statutory maximum sentence in every count consecutive to each other.

Mr. Sedlak respectfully submits that his guidelines are unduly harsh and unreasonable, and that a review of the enumerated factors in 18 U.S.C. § 3553(a) suggest that a variance is appropriate. Given the facts in this case, a sentence of 960 months is not necessary to serve the purposes of sentencing. A sentence significantly below the advisory sentencing range is reasonable in this case.

### Current Federal Sentencing Law

As the guidelines are now advisory and a guideline range may not even be presumed to be reasonable, the Court must examine each case under the directives of 18

---

1 Dr. Imhof's Report will be filed under seal. Undersigned counsel provided the government with Dr. Imhof's report.

U.S.C. § 3553(a) to impose "a sentence sufficient, but not greater than necessary" to meet the objectives of sentencing. 18 U.S.C. § 3553(a); *see also United States v. Booker*, 543 U.S. 220 (2005); *Kimbrough v. United States*, 552 U.S. 85 (2007). Of specific relevance to this case, § 3553(a) directs the Court to consider (1) the nature and circumstances of the offense and the history and characteristics of the offender; (2) the need to impose a sentence that: reflects the seriousness of the offense, promotes respect for the law and provides just punishment for the offense, affords adequate deterrence, and protects the public from further crimes of the defendant; and (3) the need to avoid unwarranted disparity among defendants who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(1-2,6). These factors bear strongly in favor of a variance for Mr. Sedlak.

### Mr. Sedlak's History and Characteristics

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 113, 116 (1996). A downward variance is warranted based on Mr. Sedlak's "history and characteristics." 18 U.S.C. § 3553(a).

    **1.**    **Mr. Sedlak's Formative Years**

Mr. Sedlak is 43 years old. He and his two siblings were raised in a tight-knit family. Mr. Sedlak attended school in Pennsylvania. He was bullied in school because he was socially awkward and had difficulty developing friendships. He became more

3

isolated and quiet.

Mr. Sedlak turned to music for solace. He began playing the alto saxophone in fifth grade. He was in the school's marching band, and was a member of the band until he graduated from high school. Mr. Sedlak's creativity extended beyond music – he began drawing, and later began painting. Mr. Seldak stopped playing the saxophone after high school, but he taught himself to play guitar, and he played guitar until his incarceration. Mr. Sedlak never stopped drawing and painting, and he is a very talented artist.

Mr. Sedlak saw a psychiatrist when he was 16 years old, and was diagnosed with obsessive compulsive disorder and depression. He took prescribe medication for several months, and participated in weekly therapy for two years. He continued to struggle with social adjustment in school, and the bullying and name calling continued until he graduated from high school.

Mr. Sedlak joined the Civil Air Patrol when he was 15 years old. He remained in the Civil Air Patrol for five years. He earned a high rank while in the program.

After Mr. Sedlak graduated from high school, he attended the University of Maryland, but dropped out after one year. He was in the Air Force ROTC during that year. He lived with his parents and attended a community college in Pennsylvania for one year.

When Mr. Sedlak was 21 years old, he moved to Florida with his family. His parents opened a store, but it did not succeed.

### 2. Mr. Sedlak's Adulthood

Mr. Sedlak has spent his adulthood in Florida. When he was young, Mr. Sedlak believed that money and power were important. *See* Exhibit 1, Mr. Sedlak's Letter to the Court. He first worked as a stockbroker for a brokerage firm, and then was self-employed as a stockbroker, from 1995-2000. Mr. Sedlak felt that service was more important than salesmanship, so he returned to school. He earned an Associate of Arts degree in Liberal Arts from Valencia College in Orlando in 2000.

Mr. Sedlak obtained licenses in order to work as an insurance agent. He worked as an insurance agent for several years. He left the insurance industry in order to work in private investigations, and to pursue working as an automobile mechanic.

Mr. Sedlak worked as a private investigator from 2003 to 2015. He also worked as an auto mechanic, and worked from his home. Mr. Sedlak enjoyed helping people and found satisfaction with the challenges of working on cars. He also obtained an ASE license and fixed small appliances and air conditioning units.

After Mr. Sedlak's arrest in the New York case, he was released on bond. During that time, he devoted his time to working on cars and painting. Mr. Sedlak finally found that working as a mechanic and pursuing his interest in art was completely fulfilling. *See* Exhibit 1.

Mr. Sedlak hopes to participate in vocational programs while he is in prison. He wants to continue painting. He wants to work on repairing the relationships he has damaged with this conviction. Mr. Sedlak also wants to receive psychological

counseling.

### 3. Mr. Sedlak's Risk Assessment

Eric A. Imhof, Ph.D., interviewed and tested Mr. Sedlak in July 2016. Based on Dr. Imhof's interview and testing, he found that Mr. Sedlak meets the diagnosis for Pervasive Depressive Disorder. *See* Imhof Report at 4. Mr. Sedlak's testing on the Abel Assessments of Sexual Interest ("AASI-3") indicate that he does not have a sexual interest in pre-pubescent children. *Id.* at 3. Mr. Sedlak's results on the Static-99-R place him in the "Low-Moderate" risk category for recidivism. *Id.* at 3-4.

Although Mr. Sedlak did not meet the threshold for an Autism Spectrum Disorder, Asperger's Syndrome was removed from the DSM-V in 2013. If Asperger's Syndrome were still the in the DSM, Mr. Sedlak would likely be diagnosed with it.

Dr. Imhof concludes that Mr. Sedlak is a good candidate for placement in the community because he has a low risk to reoffend, he is amenable to treatment, and he had a positive response to pre-trial supervision for the two months he was on supervision. *Id.* at 5.

### 4. Mr. Sedlak's Strong Support Network

Family and friends have provided letters for the Court's consideration. *See* Exhibit 2. Despite this conviction, they remain supportive and believe that Mr. Sedlak can be a positive, contributing member of society. Their letters provide instances of Mr. Sedlak's generosity and desire to help people. This strong support network will be waiting for Mr. Sedlak upon his release from prison and will help him succeed on

supervised release.

### The Requested Sentence Reflects the Seriousness of the Offense, Provides Just Punishment and Adequate Deterrence, and Protects the Public from Further Crimes by Mr. Sedlak

A sentence of 80 years is not necessary to afford adequate deterrence. Mr. Sedlak has been in custody since his arrest on November 19, 2015. This is the first time in his life that he has been in jail. *See United States v. Qualls*, 373 F. Supp.2d 873 (E. D. Wis. 2005) ("It is appropriate for a court, when considering the type of sentence necessary to protect the public and deter future misconduct, to note the length of any previous sentences imposed. **Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration**. . . .") (emphasis supplied).

He will face a substantial time in prison – at least 15 years. He will have a life time of supervised release and reporting as a sex offender. A sentence below the guidelines is sufficient punishment for Mr. Sedlak.

### CONCLUSION

Mr. Sedlak will serve a lengthy prison sentence of no less than 15 years. There is no doubt that given his history and characteristics, a large network of family and friends to support him, and his low risk for recidivism, a sentence below the applicable sentencing range of 80 years serves the purposes of sentencing. For the reasons stated herein, Mr. Sedlak respectfully urges the Court to sentence him to a reasonable sentence below the applicable sentencing range.

7

Certificate of Service

I hereby certify that the undersigned attorney filed the foregoing *Timothy Sedlak's Sentencing Memorandum* with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to Vincent Chiu, Assistant United States Attorney, Orlando Division, this 15h day of August 2016.

    Respectfully submitted,

    Donna Lee Elm
    Federal Defender

    /s/ *Angela Parrott*
    Angela Parrott
    Assistant Federal Defender
    North Carolina Bar Number 35490
    201 South Orange Avenue, Suite 300
    Orlando, Florida    32801
    Telephone 407-648-6338
    Facsimile 407-648-6095
    E-Mail: angela_parrott@fd.org
    Counsel for Timothy Sedlak